Abraham N. Geller, J.
The District Attorney moves pursuant to section 749-aa of the Judiciary Law for a special jury to try this murder first degree case. Defendant opposes on the ground that the moving affidavit merely sets forth the usual formal averments on such an application; and on the further ground, citing the “Recommendation And Survey Relating to the Abolition Of Special Juries ” contained in the Eighteenth Annual Report of the New York Judicial Council (1952), that the'survey showing imbalances as to occupations, educational qualifications and sex between the special and general jury panels should now, in view of the ‘ ‘ more liberal -and progressive reasoning ’ ’ evidenced in recent decisions, lead to the conclusion that the operation of the special jury system deprives a defendant of due process.
As to the first ground, it has been authoritatively held that a capital case is one of “ importance,” one of the standards set *537 forth in the statute providing for a special jury, and that such a case is brought within the statute “ by the simple allegation that the indictment was for the crime of murder in the first degree ” (People v. Hall, 169 N. Y. 184, 197; see, also, Vanderwyde v. Denno, 113 F. Supp. 918, 919, affd. 210 F. 2d 105, cert, den. 347 U. S. 949). In Vanderwyde, citing People v. Hall, the “ possibility of imposing capital punishment alone ” was noted to be sufficient to justify the use of a special jury. That possibility still exists under the new procedure for determining the sentence for murder in the first degree (Penal Law, § 1045-a, eff. July 1, 1963). After conviction, unless the court sentences defendant to life imprisonment because defendant was under 18 years of age at the time of commission of the crime or because of mitigating circumstances, it shall conduct a proceeding to determine whether defendant should be sentenced to life imprisonment or to death before the jury that found defendant guilty unless for good cause shown a new jury is impaneled for that purpose.
As to the second ground, two attempts to have the New York special jury provision declared unconstitutional by the 'Supreme Court of the United States failed, albeit by five to four decisions (Fay v. New York, 332 U. S. 261 [1947]; Moore v. New York, 333 U. S. 565 [1948]).
In Fay, the majority opinion stated (p. 272): “ We find nothing in the standards New York has prescribed which, on its face, is prohibited by the Constitution. There remain, however, more serious questions as to whether the special jury Act has been so administered as to deny due process to defendants and whether the dual system of jury panels as administered denied equal protection of the laws.” The majority held that the evidence then presented as to the operation of the special jury system did not warrant such a finding. In the minority opinion it was stated (p. 298): “ The undeniable result has been to permit the jury officials to formulate whatever standards they desire, whether in terms of ‘ intelligence ’ or some other factor, to eliminate persons from the ‘ blue ribbon ’ panel, even though they admittedly are qualified for general jury service.”
In 1953, a third attempt was made in Vanderwyde v. Denno (supra, p. 920) this time submitting the above-mentioned 1952 statistical report of the Judicial Council. It was held, however, that no showing had been made that the imbalances claimed were “ the result of purposeful exclusion or discrimination” and the constitutional challenge was again rejected. The Supreme Court denied certiorari (1954).
*538 The appeal to this court to, in effect, overrule these decisions of our highest court in the light of the 11 more liberal and progressive reasoning” of recent decisions on constitutional questions cannot obviously be entertained. This court is bound by those determinations in the absence of proof which would support a contrary conclusion but consistent with the principles there laid down. While it is possible that the Supreme Court, if again presented with the issue, may overrule these decisions or hold that the evidence now shows denial of due process in the manner of administration, this court may not on this motion so presume.
The court is therefore constrained to grant the motion for a special jury.
However, I would add, as a footnote, some observations and a suggestion for a practical solution of the problem.
Although the statute authorizes the court to grant a motion for a special jury in any criminal or civil case by .reason of its “ importance or intricacy” or because it has been so widely commented upon that an ordinary jury cannot “ without delay or difficulty ” be obtained, the special jury has been used almost exclusively in the trial of murder first degree cases. In the 59 years from 1901 to 1960 there were only six reported civil cases tried before special juries (see Schuster v. City of New York, 25 Misc 2d 670), and since then there have been none. From 1941 to 1950, the period covered in the 1952 Judicial Council survey, all of the murder first degree cases in New York and Kings Counties were tried before special juries, and murder first degree cases constituted more than 90% of all the cases in which special juries were used. In the past 10 years that percentage has increased to over 95%.
Actually, the provision for special juries was intended for murder first degree cases. Shortly after the statute was enacted it was stated in People v. Hall (169 N. Y. 184, 196 [1901], supra) : “ In prescribing the qualifications of special jurors, the legislature seems to have had capital cases primarily in mind ’ ’. Those qualifications are that a special juror must have no conscientious scruples against the death penalty; be certain of his ability to be uninfluenced by publicity; avows that he has no prejudice against circumstantial evidence or against any particular law or defense and that he can give a defendant the benefit of the statutory provision that his failure to testify shall not create any presumption against him. These are matters which would and are explored on the voir dire in the selection of a jury. The statute merely provides, in effect, a preliminary elimination in these respects, although counsel may, of course, *539 and do still question the special jurors about these matters. In People v. Hall the court noted (p. 197): “ These provisions are designed to avoid the ‘ delay and difficulty ’ named in the statute, which is so frequently experienced in impaneling a jury in a capital case.”
The Judicial Council pointed out (p. 160) that the “ most significant ” of these qualifications for a special juror is that he have no conscientious scruples regarding the death penalty. For murder first degree cases, to avoid “ delay and difficulty ” in the selection of a jury, advance elimination of prospective jurors who do have such scruples is necessary. In that respect the statute is only practical and sensible. The other qualifications would not have any appreciable effect in causing delay and difficulty in the selection of a jury and can be left for the voir dire.
As the practice has shown, there is no sound reason for granting a special jury on the basis of “ intricacy ” of a case. The Judicial Council stated in 1952 (p. 157): “ Improvement in the quality of jurors on the general panel has long since been accomplished by applying to all jurors the standards which formerly were required only of special jurors, with the result that the general panel now represents a true cross section of the community.” Civil eases quite often require a jury to resolve more complicated issues than those involved in murder first degree cases, yet special juries have over the years been rarely used in civil cases and in recent times not at all. In many States and in the Federal courts there is no provision for a special jury regardless of the complexity or importance of the case.
I suggest, therefore, that the special jury as such be abolished and that the statute be amended to provide that, so long as the death penalty may be imposed (there will be no need for the statute in any form if the death penalty is abolished in this State), the jurors drawn for a murder first degree case be drawn from all those on the general panel who have stated in their questionnaire that they do not have scruples against the death penalty, all such jurors being available also for any other type of case. Or, if it be deemed desirable to retain the other qualifications in the statute, it need only be amended to provide that the jurors drawn for a murder first degree case be drawn from all those on the general panel who have answered the prescribed questions as indicated. There simply would be no special or “ blue ribbon ” jury panel, since there would be no selection by the Commissioner of Jurors or Deputy County Clerk of a limited and specified number of special jurors from among those on the general jury panel whose questionnaires show that they *540 meet the statutory requirements. Under the suggested amendment it would be necessary merely to draw from time to time for murder first degree cases from all those whose answers satisfy the statute.
Even if the statute is not amended, it seems to me that section 749-aa is susceptible of a construction which could accomplish the same result. If corrective legislation is not enacted at this time, it would be desirable and it should be possible to adopt a reasonably broad interpretation of the statute, which would be consonant with the prevailing decisions on protection of a defendant’s rights, fair trial and our democratic system of justice and yet not inconsistent with the terms of the statute.
The reason why so many people regard the special jury as antagonistic to the democratic belief in a trial ,by a jury of one’s peers is that, in the administration of the system, these jury officials are directed to select, after a personal interview, a specified number of special jurors from among a much larger number of qualified and eligible jurors. Moreover, no objective statutory standard for such selection is set forth. The Judicial Council’s recommendation for the abolition of the special jury panel was based on a survey which established that, as administered, it did not represent a fair cross section of the community. It stated (p. 162): “ As indicated, a large majority of the general jurors meet the statutory standards for inclusion on the special panel. However, the question remains unanswered what standards are used to select three or four out of a hundred or so qualified jurors. The appended tables give some clues as to the answer to this question.” These tables showed that there was a disproportion on the special panel as compared with the general panel of business people as opposed to working people, those with higher educational qualifications, and men.
The statute itself does not specify the number of special jurors to be selected by the jury officials, merely such number “from the persons qualified to serve as trial jurors ” as they shall be directed to select, this being done by orders from time to time. The statute then declares ineligible those general jurors who fail to meet the tests prescribed for qualification as a special juror and provides that no person shall be selected as a special juror until examined personally by a jury official as to his “ qualification and fitness to serve as a special juror.”
Although the statute appears literally to provide for a selection pursuant to direction of a specific, predetermined number of special jiirors out of the eligible number of general jurors, in my opinion selection of that entire number of eligible jurors would be a selection “from the persons qualified to serve as *541 trial jurors ” which would prevent the possibility of nonobjective, arbitrary, discriminatory and undemocratic selection by any officials and at the same time be consistent with the purposes of the statute. In any event, such an interpretation is not forbidden by the terms of the statute. The personal examination as to qualifications and fitness, which should really be solely for the purpose of assuring that the answers to the prescribed questions are true, should have been and, presumably, was done at time of original qualification upon submission of filled-out questionnaire. and could be limited to that in the future. The entire group of general jurors eligible as special jurors would be available for drawing in cases in which an application for a special jury was granted and, in addition, would be available, the same as general jurors, for any other type of case.
The proposed amendment would provide a simple method, which is needed solely for practical reasons in murder first degree cases so" long as the death penalty may be imposed, but, even if the Legislature fails to amend the statute, it is susceptible of an interpretation whereby the available special jurors would be drawn from all the jurors qualified to serve as trial jurors who are not found to be ineligible under the statutory tests.